*E-Filed 10/16/12*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SALVADOR N. NEGRETE, | No. C 11-3436 RS (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| G. D. LEWIS, | |
| Defendants. | |

## INTRODUCTION

Plaintiff, a prisoner at Pelican Bay State Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional right to due process. For the reasons stated herein, defendants' motion for summary judgment is GRANTED.[1] Judgment will be entered in favor of all defendants as to all claims, and plaintiff shall take nothing by way of his complaint.

---

[1] Although plaintiff raises several additional claims in his opposition, this order addresses only his due process claim as it is the only claim raised in his complaint.

## BACKGROUND

The following facts are undisputed unless noted otherwise. At Pelican Bay on August 20, 2008 and December 22, 2008, violent incidents occurred between inmates of two rival gangs, the Northern Hispanic and Southern Hispanic. (Pl.'s Decl. ¶ 9; MSJ at 2, Bell Decl. ¶ 9.) In an effort to protect the safety of inmates and staff members, prison officials responded to the incidents by implementing modified programs and lockdowns designed to separate the two gangs. (Pl.'s Decl. ¶ 9; MSJ at 3, Bell Decl. ¶¶ 10-11, 14.) A lockdown confines all inmates to their cells and also restricts all non-essential prison programs and services. (MSJ, Bell Decl. ¶ 12.) A modified program, on the other hand, "is less restrictive than a lockdown and typically involves suspension of various programs or services for a particular group of inmates." (*Id.* at ¶ 11.) The restrictions placed by the lockdowns and modified programs were then incrementally lifted when safety and security were ensured. (*Id.* at ¶ 11.) Efforts to terminate the modified programs completely, however, were continually thwarted by further violence between the two gangs. (*Id.* at ¶ 14.) Between June 26, 2009 and July 1, 2010, there were five incidents between Northern Hispanic and Southern Hispanic inmates leading to further program restrictions. (Pl.'s Decl. ¶¶ 14, 15.)

Plaintiff transferred to Pelican Bay on March 4, 2009, and was housed in Facility B until March 24, 2011. (*Id.* at ¶¶ 9, 17.) He was classified as a Southern Hispanic prior to his arrival and was immediately put on the same modified program affecting Southern Hispanic inmates. (*Id.* at ¶ 9.) While housed in Facility B, plaintiff always was subject to lockdowns or modified programs. (*Id.* at ¶ 17.) As a result, he has, at various times, been denied access to contact visits, phone calls, inmate canteen, quarterly packages, laundry exchange, job participation, recreation yard, classes, the chapel, food sales, and other programs. (*Id.*) Plaintiff also alleges that he suffered loss of mobility, and physical as well as emotional pain from the constant lockdowns and modified programs. (*Id.* at ¶ 23, 24.) Plaintiff claims that defendants violated his right to due process by placing him on constant lockdown or modified programming in the roughly two years he spent in Facility B, impermissibly

denying him access to programs and services.  (MSJ at 1.)

## DISCUSSION

**I.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to set forth specific facts showing there is a genuine issue for trial, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

The Court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.

*Id.*

## II.     Due Process Claim

Plaintiff claims that defendants violated his right to due process by placing him on constant lockdown or modified programming in the roughly two years he spent in Facility B. (Compl., Ex. A at 1.)  He admits that lockdowns and modified programs were instituted as a response to violent incidents between two rival gangs.  (Pl.'s Decl. ¶ 9.)

Plaintiff argues that the lockdowns were improper because he was not involved in any of the incidents that led to them.  (Compl. at 3.)  A prison lockdown may be imposed where warranted by a state of emergency.  *See Hayward v. Procunier*, 629 F.2d 599, 601 (9th Cir. 1980).  Where a lockdown is imposed, the conduct of the prisoners is not at issue, the question is whether the degree of emergency justifies a continuation of the lockdown.  *See id.* at 602.  The decision by a prison official to institute a lockdown is accorded great deference. *See Pepperling v. Crist*, 678 F.2d 787, 789 (9th Cir. 1982).  Indeed, federal courts "defer to prison officials' *judgment*" in deciding to lock down an institution "so long as that judgment does not manifest either deliberate indifference or an intent to inflict harm."  *Noble v. Adams*, 646 F.3d 1138, 1143 (9th Cir. 2011).  Where the lockdown is in response to a genuine emergency and is not used as punishment, procedural due process is not required.  *See Hayward*, 629 F.2d at 602.

Plaintiff has not shown a triable issue of material fact as to his due process claims. Although plaintiff did not directly participate in the incidents, his conduct is not at issue. What is at issue is whether the degree of emergency justified a continuation of the lockdown. The undisputed facts in the record show that before plaintiff arrived at Pelican Bay and during plaintiff's stay, there were a number of incidents between the Northern Hispanic and Southern Hispanic inmates.  Although plaintiff described them as "small incidents," he nonetheless characterized some of them as assaults or riots.  (Pl.'s Decl. ¶¶ 9, 13, 14.) Because prison officials must maintain the safety of inmates, it was reasonable to implement lockdowns to separate Northern and Southern Hispanic inmates after the assaults.  Here, the

captain of Facility B stated that lockdowns and modified programs were implemented initially in response to a violent incident that occurred in August 2008 at Facility B's main exercise yard. (MSJ, Bell Decl. ¶ 14.) The fact that more violence occurred after the initial incident in 2008 tends to support the idea that the lockdowns were a necessary response in order to maintain prisoners' safety during that time. Plaintiff also makes no showing of deliberate indifference or intent to inflict harm by prison officials. On the contrary, plaintiff himself acknowledges that the assaults between inmates rebuts the idea that administrators harbored some invidious purpose in implementing lockdowns. Because the lockdowns were in response to a genuine emergency and were not used as punishment, plaintiff was not owed procedural due process in the form of a hearing or otherwise before being locked down.

Plaintiff also claims that the lockdowns and modified programs presented an atypical and significant hardship amounting to a deprivation of his procedurally protected liberty interest. Deprivations that are authorized by state law may amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).[2] Generally, "real substance" is limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487. Whether a restraint is "atypical and significant" under *Sandin* requires a case by case consideration. *Ramirez v. Galaza*, 334 F.3d 850, 860-61 (9th Cir. 2003). *Sandin* requires a factual comparison between conditions in the plaintiff's former status and his new status, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).

---

[2] While *Sandin* required a court to find whether there was a state statute or regulation that created a liberty interest before finding a violation of due process, the Supreme Court recently stated that the touchstone of the inquiry is the nature of the conditions themselves. *See Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005) (citing *Sandin*, 515 U.S. at 484) (finding state-created liberty interest in avoiding assignment to "supermax" prison without discussing language of state regulations).

Plaintiff does not allege that defendants' action affected the duration of his sentence, therefore this Court will only determine whether his claim amounted to an atypical and significant hardship.  Plaintiff fails to present evidence describing the lockdown conditions and normal conditions at Pelican Bay with sufficient detail for a trier of fact to find a violation of his right to due process.  Plaintiff's affidavit lists the services and programs he was deprived of as a result of the modified programs, but it does not reveal the duration in which different programs or services were restricted.  It also does not shed any light on the normal conditions at Pelican Bay when prisoners are not affected by a lockdown or modified program.  Without this information, a factfinder cannot compare the plaintiff's alleged hardships in relation to basic conditions in order to find the deprivations atypical and significant.

Furthermore, while plaintiff claims he was under "perpetual lockdown" at Facility B, parts of the record that do indicate the duration in which programs were restricted actually contradict his claim.  Plaintiff submitted evidence that show Southern Hispanic inmates were not constantly deprived of all the services and programs he listed in his affidavit.  (Pl.'s Opp., Exs. C, E, F, G, H.)  The weekly program reports instead reveal that at various times while plaintiff was housed in Facility B, the services or programs were merely modified, and not completely denied to plaintiff.  (*Id.*)  The record shows that individual programs were, at times, actually administered normally after prison officials gradually lifted the restrictions. (*Id.*)  Therefore plaintiff fails to show that he suffered an atypical and significant hardship in relation to the ordinary incidents of prison life.  Where there is not an atypical and significant hardship, the prisoner has not been deprived of a procedurally protected liberty interest.  Because plaintiff cannot show he had been deprived of a procedurally protected liberty interest, plaintiff has no right to due process before being locked down.  There is no genuine issue for trial and defendants are entitled to judgment as a matter of law on the due process claim.

### III. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from plaintiff's due process claim. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Under *Saucier v. Katz*, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205.[3]

As to the first prong, for the reasons discussed above, plaintiff has not shown that defendants violated a constitutional right. As to the second prong, even if plaintiff had shown that defendants had violated a constitutional right, defendants have presented undisputed evidence that a reasonable official could have believed that his conduct was

---

[3] Although the *Saucier* sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009).

lawful under the circumstances. *See id.* at 205-06. The record shows that prison administrators instituted lockdowns in response to a series of violent incidents between the Northern and Southern Hispanic inmates. Prison officials had a duty to secure the inmates' safety and the series of assaults demonstrated the two gangs' animosity toward each other at the time plaintiff was housed in Facility B. Plaintiff was classified as a Southern Hispanic prior to his transfer to Pelican Bay. The circumstances necessitated separation of the two gangs notwithstanding plaintiff's noninvolvement in the incidents as officials did not know who would be in danger or which inmates posed a risk to others. In fact, all Northern and Southern Hispanic inmates were liable to initiate altercations with each other according to the gangs' history. Defendants' action was therefore a reasonable response in order to ensure plaintiff's and other inmates' safety until further investigation can confirm that violence would not ensue after restrictions were lifted. Defendants are entitled to qualified immunity because a reasonable official could have believed that his conduct was lawful under the circumstances. *See id.*

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Docket No. 13) is GRANTED. Plaintiff's motion for sanctions (Docket No. 26) is DENIED. The Clerk shall terminate Docket Nos. 13 and 26, enter judgment in favor of all defendants as to all claims, and close the file.

**IT IS SO ORDERED**.

DATED: October 16, 2012

                RICHARD SEEBORG
                United States District Judge